## J. M. AYCOCK *et al. v.* THE STATE.

1. THREATS—EVIDENCE.—In a trial for seriously threatening to take life, it was competent for the prosecution to prove facts showing that the accused harbored hostile feelings against the party threatened, before, at, and after the making of the threats.

2. SAME—CHARGE OF THE COURT.—It was not error to charge the jury that they might consider whether a grudge existed between the parties when the threats were made, if made at all; and whether they were made in an angry voice and violent manner, or jestingly; and whether the accused evinced a purpose of executing them.

3. PRACTICE IN THIS COURT.—When a verdict is manifestly against the weight of the evidence, this court has no discretion, but must reverse and remand the case. See evidence in the present case held so to preponderate against the verdict as to necessitate a reversal and remand of the case.

APPEAL from the District Court of Coryell. Tried below before the Hon. J. R. FLEMING.

The case is fully disclosed in the opinion of the court.

The jury found a verdict of guilty, and a fine of $500 against each of the defendants.

*J. J. Vardeman, J. C. Stone,* and *Terrell & Walker,* for the appellants.

*George McCormick,* Assistant Attorney General, for the State.

ECTOR, P. J. The defendants were convicted in the district court of Coryell county for seriously threatening to take the life of one M. A. Clark, on February 14, 1875, and have appealed to this court.

The 1st error assigned by the defendants is that the court below erred in overruling their objections to certain testimony set out in their bill of exceptions. The testimony was doubtless introduced on the part of the prosecution for the purpose of showing the state of feeling on the part of the accused towards M. A. Clark, at, before, and after the time the threats were made by the accused to take his life (if any such threat were made), as charged in the indictment. And we think the objections to the testimony were properly overruled.

The next error assigned is that the district judge who presided at the trial, in the 2d and 4th subdivisions of his charge, did not properly instruct the jury as to the law of the case. In the 2d instruction the judge properly charged the law. In order to determine whether an offense had been committed, the jury were told, in the 2d subdivision of the charge, that they might take into consideration all the circumstances surrounding the parties, as whether there was a grudge existing between them at the time the threats were made (if any were made); the manner of the party making the threats, as whether they were made in an angry tone of voice, in a violent manner, or were made in jest or good humor; and whether or not the party evinced an intention of executing the threats so made, by any subsequent attempt to carry them into execution. We, therefore, believe that the error assigned, as to this instruction, is not well taken.

The 4th instruction of the court to the jury is as follows: "If the jury believe from the evidence that the condition contained in the alleged threat was that the said M. A. Clark should desist from disturbing other persons living

in the neighborhood, or should leave undone some alleged threat made or act to be done by Clark to make other persons leave the county, such a condition the defendants had no right to require, and, if the jury believe from the threat this was the condition of the alleged threat, then the same was not a conditional, but an unqualified, threat; but the defendants would have the right to make the threat to prevent the commission of the act of driving persons from the county, for such an act would be unlawful.''

The learned judge who delivered the charge failed to state the law in the 4th instruction with his usual clearness and perspicuity. This portion of his charge is vague, and perhaps inconsistent, and was calculated to mislead the jury, to the prejudice of the rights of the defendants.

We will now proceed to the 3d and last assignment of errors, viz., that '' the court erred in overruling the defendants' motion for a new trial.'' After what we have already said in this opinion, it will be only necessary to notice the third ground set out in defendants' motion for new trial, namely, '' that the verdict of the jury is contrary to the law and the evidence.''

The defendants, as we conclude, were convicted upon the testimony, mainly, of the witness A. B. Garrett. This witness testified that on the morning of February 14, 1875, he went with Tom Mangham to Judge Mayberry's. John Huddleston was there; they were standing by the gate, when Aycock and Hester came. Aycock was mad and excited; was talking of parties who were threatening to drive some negroes off; accused witness and Mose Clark of it, and said, '' Mose Clark is a d—d rascal, and, G—d d—n him, I intend to shoot the top of the d—d rascal's head off;'' and Hester said, '' It ought to be done.'' That Aycock repeated these words several times, and, every time, Hester would say, '' It ought to be done.''

Tom Mangham, examined by the state, testified that he went with Garrett to Judge Mayberry's. Aycock and Hester were there on horseback. Aycock was angry and much excited. Witness was in five feet of him. Aycock was very abusive of Garrett; witness heard all that was said; stayed till Aycock and Hester left, and heard no threats against Clark. Garrett, Judge Mayberry, John Huddleston, witness, Aycock, and Hester were present.

Judge Mayberry testified that he was present the morning of February 14, 1875, when, at his gate, Aycock and Hester came, and that he remained until they left; heard all that was said. Aycock abused Garrett; made no threats against Clark.

In addition to this the defendants introduced several witnesses, amongst the number L. M. Allen, county clerk, and S. B. Raby, the judge of the county court, who testified that they were " acquainted with the general reputation of the witness A. B. Garrett for truth and veracity in the neighborhood in which he lives; that it is bad."

After a careful examination of the evidence, we think it is not sufficient to sustain the verdict of the jury and the judgment of the court. It is first the duty of the district court to grant a new trial when the verdict is contrary to the law and the evidence. Pasc. Dig., Art. 3137. This court may revise the judgment of a lower court, on appeal in a criminal case, as well upon the law as upon the facts; but, when a cause is reversed for the reason that the verdict is contrary to the weight of the evidence, the same shall in all cases be remanded for a new trial. Pasc. Dig., Art. 3210.

It is the appropriate duty of the jury to pass upon the evidence. After the jury have returned their verdict, then the responsibility is next imposed upon the district court to determine whether or not there has been adduced before the

jury a sufficient amount of evidence to support the verdict. Then, as a last resort to the courts of the country, the accused may take an appeal to this court.

It is seldom that this court has felt it to be its duty to reverse the action of a district court in refusing to grant a new trial for the want of sufficient legal and competent evidence to sustain the verdict. When, however, it is manifest to this court, in a criminal action, that the verdict is clearly against the weight of the evidence; that the judgment is wrong and ought not to stand and become a precedent in the adjudication of offenses under the law, we have no discretion left us, but must reverse the decision of the lower court. See the rule laid down by our supreme court in the case of *Tollet* v. *The State*, 44 Texas, 95.

We are clearly of the opinion that there was not sufficient evidence in this case to warrant the verdict of the jury.

*Reversed and remanded.*