3   213
37   166

</div>

## N. B. LEVERETT *v.* THE STATE.

1. JURY — VERDICT. — In a felony case the jury agreed upon a verdict of guilty, and assessed the term of confinement in the penitentiary at the average of the several assessments of the twelve jurors.   It was not shown that the jurors, before making the computation, agreed to be bound by the result.   *Held*, not ground for new trial.

2. CHARGE OF THE COURT. — Five witnesses having sworn that, from the general reputation for truth of the principal state's witness, they would not believe him on oath, the accused asked the court to charge the jury that they could receive or reject any evidence on the ground of credibility, and could not convict until the presumption of innocence was overthrown by proof made by credible witnesses or by circumstances; which instruction was refused.   *Held*, properly refused, because it is not the business of the court to tell the jury either to accept or reject testimony.

3. SAME. — Ordinarily, the province of the court is limited to determining the admissibility of the evidence, without instructing the jury upon its weight.

4. CREDIBILITY OF IMPEACHED WITNESS. — Though a witness be impeached by others, the jury are the judges of the credibility of his testimony in the particular case on trial.

5. PRACTICE IN THIS COURT. — Only in cases were the verdict appears to be wrong, oppressive, and unjust will this court disturb it on account of the evidence.

APPEAL from the District Court of Delta.  Tried below before the Hon. G. J. Clark.

The opinion states the case.

*E. B. Perkins*, for the appellant.

*George McCormick*, Assistant Attorney General, for the State.

White, J.  Appellant was indicted and convicted for the theft of an estray mule, and his imprisonment assessed at eight years in the penitentiary.  A careful inspection of the record satisfies us that none of the errors complained of are of such a character as would warrant a reversal of the judgment, and we do not deem it necessary to discuss but two of them.

1. One of the grounds upon which the motion for a new trial was based was that the jury had made up or arrived at their verdict by chance.  This branch of the motion is supported by the affidavits of two of the attorneys of defendant, who state that, after the verdict had been returned "and after court adjourned, they were informed that the jury made up their verdict by chance, whereupon they proceeded to the place where said jury retired to make up their verdict, and there they found the exhibits which are filed with the motion for a new trial in said cause, marked ' Exhibits 1, 2, 3,' etc., up to ' 12 ;' and that they also found at the same time and place another paper, which they file herewith, marked ' Exhibit C,' with figures thereon in twelve numbers, showing that the division shown thereon would give eight, the number of years for which defendant was convicted ; and to the best of their judgment, from comparing the handwriting with the handwriting of R. C. Anderson, the foreman of said jury, they believe the said figures were made by said foreman ; and from what they have been informed by several parties, and from the place they found the said

paper, they believe it was the manner of coming at the verdict of said jury in said cause."

These exhibits tended to show that each of the jurymen had written his individual verdict of guilty, and the number of years he was willing to affix as the *quantum* of the punishment. The numbers of the years thus set down by each juryman were added together, and divided by twelve, giving eight as the quotient. Suppose that we admit, for the sake of the argument, that such evidence was admissible, competent, and conclusive of the fact sought to be established, would a verdict which had been thus arrived at become necessarily vicious and void?

Our Code of Criminal Procedure provides that new trials in cases of felony shall be granted " where the verdict has been decided by lot, or in any other manner than by a fair expression of opinion by the jurors." Pasc. Dig., art. 3137, subdiv. 3.

Thompson's case, which is reported in 8 Gratt. 637, and which was a trial for murder, is a case directly in point. After conference and discussion, on their retirement in that case, the jury all consented to find the prisoner guilty. It was then agreed to do just what it is alleged the jury in this case did, viz., that each juror should set down the number of years he thought the offense merited, that all the numbers should be added, the aggregate be divided by twelve, and the result be their verdict. *Held*, that there was no ground for a new trial. The reasons given by the able and distinguished jurist who delivered the opinion in that case (Thompson, J.), for the conclusions arrived at, are to our minds so satisfactory and conclusive that we take the liberty of quoting largely from the decision.

He says : " Unquestionably every verdict, whether in a civil or criminal case, but more especially in a criminal case, should be the result of reason, deliberation, and honest

conviction, and not the offspring of chance or accident. If a jury, therefore, should so far forget a sense of duty and the obligations of their oath as to determine their verdict by the casting of lots, whether for whom to find, or the measure of damage, or degree of guilt and *quantum* of punishment, as the case may be, there is no doubt upon reason or authority as to the right and duty of the court to set aside the verdict and award a new trial, if the fact be established to its satisfaction by competent testimony.

" But, on the other hand, when a jury has deliberated, and made up and returned their unanimous verdict — a verdict neither in conflict with the law or the evidence — it is due alike to public and private interests, and to the sanctity of, and a becoming respect for, the jury trial, that courts should not upon trivial grounds interfere or meddle with that verdict. The power to award new trials should be exercised with caution and circumspection, and only for good and sufficient cause. It is certainly a *desideratum*, both to the parties and to the public, that juries should agree upon their verdicts, if possible, and as speedily as practicable. * * * So expedient was it deemed in the early periods of English jurisprudence, that consent in a verdict was even extorted from the jury under the pains and penalties of hunger and thirst, and other privations, and of being carted round the circuit with the judge, and held in a sort of duress until they agreed. If it be sound policy to end litigation by the rendition of a verdict as soon as practicable consistently with the purity, impartiality, and integrity of the jury trial, though we may very properly nullify a verdict which was the result of a lottery, we should certainly be running counter to that policy to place a verdict like this in the same category. There is no real analogy between the two cases ; or, if any, but seeming and remote." 8 Gratt. 637.

The authorities, however, make a distinction between the

resorting to chance to determine absolutely the verdict, and the adopting such means, not with the intention of being bound by the result at all events, but only in case the result thus attained proves satisfactory to the jury. 2 Gra. & Wat. on New Tr. 580. The Supreme Court of New York say : "If the means is adopted merely for the sake of arriving at a reasonable measure of damages, without binding the jurors by the result, it is no objection to the verdict." *Dana* v. *Tucker,* 4 Johns. 487. The Supreme Court of Tennessee say : " A jury may make the experiment with a view to ascertain what the amount will be, and, if the amount produced give satisfaction, they may retain it as their verdict. But they cannot agree before the amount is ascertained that they will abide by it ; and, if they do, it is an error for which a new trial will be granted." *Harvey* v. *Jones,* 3 Humph. 157. See, also, *Baker* v. *Bennett,* 3 Humph. 160.

The Supreme Court of Massachusetts say : " The impropriety consists *in the agreement to be bound by the result.* No one was bound by the result. And, if the average was finally adopted as the amount of the verdict, it was after a comparison of the different views of all, after due deliberation and full discussion of the whole subject, and by reason of reciprocal concessions among the different jurors. It appears to have been freely assented to by all, and we can perceive no impropriety in the mode of reaching the result." *Dorr* v. *Fenno,* 12 Pick. 521. See, also, *Dunn* v. *Hall,* 8 Black, 32 ; *Coperthwaite* v. *Jones,* 2 Dall. 55. And in *Chandler* v. *Barker,* where the verdict was obtained in the same manner, and the jury were polled and each juror answered that it was his verdict, the court refused to grant a new trial. 2 Harr. 387 ; *Grinnell* v. *Phillips,* 1 Mass. 530 ; *Heath* v. *Conway,* 1 Bibb, 398. In all the cases above cited and referred to, the verdicts were arrived at as the case we are considering.

The only other question growing out of the case which we propose to notice is with regard to the testimony of the principal witness for the prosecution. Five witnesses for the defendant testified that they knew the character of this witness for truth and veracity in the neighborhood in which he lived; that it was bad, and that they would not believe him upon oath. With regard to this testimony the defendant's counsel requested the court to charge the jury as follows:

1. "The jury are the sole judges of the evidence, and they may receive or reject any evidence upon the grounds of credibility."

2. "That the presumption of innocence of the defendant must be overthrown by proof made by credible witnesses or circumstances before they can find him guilty."

These charges the court refused to give, and, we think, properly. It is not the business of the court to tell the jury either to accept or reject testimony which has been adduced before them. The province of the court is ordinarily limited to passing upon the legality and competency of the evidence offered. *Tollett* v. *The State*, 44 Texas, 97. After he has performed that duty, and permitted its introduction, our statute says " the jury are the exclusive judges of the facts in every criminal cause." Pasc. Dig., art. 3058. And again: " The jury, in all cases, are the exclusive judges of the facts proved and of the weight to be given to the testimony, except where it is provided by law that proof of any particular fact is to be taken as either conclusive or presumptive proof of the existence of another fact, or where the law directs that a certain degree of weight is attached to a certain species of evidence." Pasc. Dig., art. 3108.

And though a witness may be impeached for truth and veracity, by others swearing they would not believe him upon oath, still it is a matter for the jury to decide and determine for themselves how far they will credit his state-

ments, and what weight they will attach to his evidence, in the particular case. After they have returned their verdict, the duty of the District Court will be regulated by Paschal's Digest, article 3137, and that of this court, on appeal, by Paschal's Digest, article 3210. As was said by our Supreme Court, in *Tollett* v. *The State:* "These provisions impose upon the District Court, in the first instance, and afterwards on this court, the responsibility of determining whether or not there has been adduced before the jury a sufficient amount of legal and competent evidence as would render it safe to allow the verdict to stand and become a precedent in the adjudication of offenses under the law." 44 Texas, 95.

And, as was said by this court in *Thompson* v. *The State*, "it has been the unvarying practice of our Supreme Court not to disturb the verdict of the jury if at the trial there was sufficient evidence to support it. This court will adhere to the same rule, and only in cases where the verdict appears to be wrong, oppressive, and unjust will the verdict be disturbed." 1 Texas Ct. App. 57.

There is nothing in the record of this case which requires or constrains us to interfere with the judgment of the lower court, and it is, therefore, affirmed.

*Affirmed.*